UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
DEC 22 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-28-GWU

ROBERT ASHER,                             PLAINTIFF,

VS.                 **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,          DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Robert E. Asher, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of cirrhosis of the liver and was status post closed reduction bilateral dislocated shoulders. (Tr. 16-17). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Asher retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 19-22). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to light level exertion, and also had the following non-exertional impairments. (Tr. 60). He: (1) could not climb ladders, ropes, scaffolds, balance, kneel, crouch, or crawl; (2) could occasionally stoop; and (3) had a limited ability to tolerate temperature extremes, heights, or hazardous machinery. (Tr. 60-1). The VE

Asher

responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 61).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.[1]

Mr. Asher alleged disability in his present application due to weakness in both shoulders and cirrhosis of the liver. (Tr. 498). He testified that he had last worked as a security guard in 1998, but could not stay awake all night, and was fired. (Tr. 40-1). His primary previous employment had been as a carpenter from approximately 1983 to 1992, but he could no longer do this work because the shoulders had been broken. (Tr. 42-3, 48-9). Mr. Asher also alleged a problem with seizures, for which he took Dilantin, but his last seizure had been a year before the March 8, 2004 hearing. (Tr. 48). He had been told by his treating physician, Dr. Roy Varghese, that he had cirrhosis of liver, and had stopped drinking alcohol at that point on his own. (Tr. 45). Dr. Varghese gave him Klonopin for his nerves. (Tr. 46). He had no specific mental health treatment, because of lack of funds. (Tr. 55).

---

[1] The plaintiff had filed a previous application for benefits in 1999, which was denied in a decision by another ALJ on May 26, 2000 (Tr. 452-8). The Appeals Council had declined to review this decision, which then became administratively final. (Tr. 16).

8

Asher

Medical records from the period after the first ALJ's decision include a brief hospitalization in January, 2002 for an alleged seizure, although it was also noted that the plaintiff had a history of chronic alcoholism "which is relieved." (Tr. 531-2). Mr. Asher did well in the hospital, and was discharged home with medications for seizures, including Dilantin. (Tr. 532). Dr. Varghese, who treated him during the admission, suggested normal activity but recommended that "seizure precautions" be observed. (Id.). Mr. Asher also made emergency room visits in March, 2002 with complaints of anxiety, panic attacks, and alcohol abuse. (Tr. 535). Dr. Varghese's office notes indicate that he was seen regularly beginning in January, 2002 in which time it was noted that the plaintiff's seizures had been due to not taking Dilantin and, once he was taking it, he was no longer having them. While he had a history of dislocation of the shoulder, "he got better." (Tr. 541). Dr. Varghese found no neurological deficits on examination, and commented: "He is doing well and he is happy." (Id.). In December, 2002, the physician noted severe jaundice and ascites; laboratory testing showed an abnormal liver function as well as hypothyroidism. (Tr. 538-9, 543). The physician did not list functional restrictions, but indicated a "poor" prognosis, and advised his patient to stop drinking. (Tr. 538). However, in January, it was noted that he was doing "better" after he had stopped drinking. (Tr. 537). Dr. Varghese's assessment was "cirrhosis, compensated," stable hypothyroidism, and "controlled" seizure. (Id.).

9

Asher

At this point, a state agency physician, Dr. J.E. Baez Garcia, reviewed the record, and determined that the plaintiff could perform light level exertion and could never climb, balance, kneel, crouch, and crawl. (Tr. 577-83). This is the only specific residual functional capacity assessment by a medical professional since the 2000 ALJ decision, and it is consistent with the current ALJ's hypothetical question. The hypothetical question also includes seizure precautions, as indicated by Dr. Varghese at the time of the plaintiff's hospital discharge.

Subsequent office notes from Dr. Varghese were submitted, covering the period from March, 2003 to January, 2004. (Tr. 599-607). Although the notes list a variety of problems including hypothyroidism, seizure, anxiety, sleeplessness, cirrhosis, erectile dysfunction, and gynecomastia, the physician notes that the problems were "controlled," and usually indicated that the plaintiff was "doing well." (Id.). In July, 2003, the physician wrote, for example: "He is up and about without difficulty." (Tr. 604). The most recent note indicates that the plaintiff was complaining of anxiety and tension, but was "doing well," and his seizure disorder was controlled with Dilantin. (Tr. 599).

Regarding mental restrictions, the plaintiff underwent an examination by a psychiatrist, Dr. Robert Eardley, in March, 2003. (Tr. 549). Dr. Eardley also had a 1999 psychological evaluation by a psychologist, Dr. William Rigby, available for review. (Id.). Mr. Asher denied having a problem with alcohol or drugs, and

10

admitted that there was a question about the etiology of his seizure condition. (Tr. 549-50). Dr. Eardley thought that Mr. Asher's mood and affect suggested depressive factors related to situational issues and emotional overlay. (Tr. 551). There was no deterioration in personal habits and no impaired ability to relate. (Tr. 552). He diagnosed only a depressive disorder "by claimant's statements," and felt that Mr. Asher was able to make personal and social adjustments and "apparently" had the ability to understand, remember, and carry out instructions. (Id.).

A state agency psychologist, Dr. Ilze Sillers, reviewed the record at this point and concluded that the plaintiff did not even have a "severe" mental impairment. (Tr. 561).

On appeal, the plaintiff makes three arguments.

First, the plaintiff argues that the ALJ should have been bound by the lifting restrictions given in the prior final decision from 2000. The first ALJ had limited Mr. Asher to "light work activity," but had added that he could only lift up to five pounds for a maximum of two hours per day. (Tr. 454-5). The current ALJ said he found no support for such restrictions (Tr. 19), but, in any case, he had asked the VE a hypothetical question reflecting these restrictions as well as the non-exertional impairments that had been given in his first hypothetical question, and the VE testified that there were jobs that the plaintiff could perform (Tr. 62). Therefore, the issue is moot.

11

Asher

Second, the plaintiff argues that Dr. Rigby's psychological restrictions from his 1999 examination should have been included in the hypothetical question. The only indication that Dr. Rigby, who diagnosed dysthymia, would have found any mental limitation was a statement that Mr. Asher "appears to have a fair ability to tolerate the stress and pressures of work activity." (Tr. 161).[2] The prior ALJ had found no specific mental restrictions. (Tr. 454-5). The ALJ in the present case did not reopen the prior application. Thus, even construing Dr. Rigby's comment as representing more than a minimal restriction, the evidence related to the prior application had already been adjudicated.

Finally, the plaintiff argues that he clearly was incapable of performing some of the jobs listed by the VE in response to the hypothetical question. Specifically, the plaintiff asserts that he could not perform the job of light cleaner if he was unable to balance, kneel, crouch, and crawl, and that he could not perform the job of grinding machine operator due to the restriction on working around hazardous or dangerous machinery. The Commissioner concedes that it is possible the cleaning job would have been precluded, but submits <u>Dictionary of Occupational Titles</u> (DOT) Section 690.685-194, captioned "grinding machine operator, automatic" as evidence that this job did not involve any of the non-exertional restrictions listed in the hypothetical question. Specifically, the section states that the job does not involve proximity to

---

[2]The term "fair" was not defined.

12

Asher

moving mechanical parts. The plaintiff presents no evidence to the contrary. Moreover, as the Commissioner also points out, the VE also identified inspecting and checking occupations, and the plaintiff does not even allege that these jobs would be precluded by the hypothetical question.

The decision will be affirmed.

This the 22 day of December, 2005.

G. WIX UNTHANK
SENIOR JUDGE

13